Margaret Fainblatt Horowitz v. Commissioner. Irving Fainblatt v. Commissioner. Leon Fainblatt v. Commissioner.
Horowitz v. Commissioner
Docket Nos. 9730, 9731, 9732.
United States Tax Court
1947 Tax Ct. Memo LEXIS 187; 6 T.C.M. (CCH) 642; T.C.M. (RIA) 47153; June 12, 1947
*187 In 1931 Harry Horowitz, experienced in the needle trade industry, became an employee of Lee Sportswear Co., a partnership composed of Leon Fainblatt, Irving Fainblatt and Margaret Fainblatt. In 1934 he married Margaret Fainblatt. At the time he was offered a membership in the firm but refused because of the family situation. Later he received offers from competing manufacturers of a larger salary and a share in the profits. He became dissatisfied with his status as an employee of Lee. Finally he was offered by other manufacturers twice his present salary and 20 per cent of the profits. He then demanded a proprietary interest in Lee. The partners were anxious to retain his skill, knowledge and services in the business and agreed to admit him as a partner. Upon the insistence of Margaret Horowitz, the wives of her brothers were also included. The partnership contract was executed November 1, 1940, by the petitioners and their respective spouses, each having a one-sixth interest therein. The wives contributed no capital, performed no material services, knew nothing about the business and had no voice in its management. In partnership affairs they only followed the instructions of others. *188 Held, that during the taxable years Harry Horowitz had a one-sixth partnership interest in Lee; Margaret Horowitz a one-sixth interest; and Leon and Irving Fainblatt each a one-third interest therein. JACOB Rabkin, Esq., Mark D. Gleason, C.P.A., and N. H. Sirota, C.P.A., for the petitioners. Clay C. Holmes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income taxes of the petitioners as follows: Petitioner
1941
1943
Margaret Fainblatt
Horowitz
$6,361.15
$43,417.63
Irving Fainblatt
6,121.76
42,991.14
Leon Fainblatt
6,095.59
43,907.79
The sole issue is whether the income of the partnership of Lee Sportswear Co. should be divided equally among the petitioners or should be so divided among them and their respective spouses. Findings of Fact The petitioners, Margaret Fainblatt Horowitz, Irving Fainblatt and Leon Fainblatt, are individuals residing in Douglaston, Laurelton and Great Neck, New York, respectively. Aida Fainblatt is the wife of Leon Fainblatt and Dorothy Fainblatt is the wife of Irving Fainblatt. The petitioners filed their income tax *189 returns for the taxable years with the collector of internal revenue for the third district of New York. Lee Sportswear Co., hereinafter called Lee, is a partnership engaged in the manufacture and sale of women's and children's sport clothing and women's work clothing. It operates in New York City. The business was established in 1929 by the petitioner, Leon Fainblatt. Shortly thereafter the petitioners, Margaret Horowitz and Irving Fainblatt, associated themselves with their brother in the business and in 1934 they formally organized a partnership and duly filed a certificate of conducting such business under the assumed name of Lee Sportswear Co. The petitioners have devoted all their time to the business. Margaret Horowitz, an interior decorator prior to her participation in the partnership business, helps style the garments, buys the trimmings, services the making of garments and supervises their manufacture. The garments are cut in the petitioner's plant and assembled by a contracting plant. Leon Fainblatt buys material and sells the manufactured product. Irving Fainblatt buys goods, runs the office and supervises salesmen. All three consult and join in matters of business *190 policy. Harry Horowitz entered the needle trade industry in 1911. At times prior to 1931 he had been in business for himself. He is a manufacturer of children's and women's garments. He is a designer, a pattern maker, a grader and a marker. On April 1, 1931, he was employed by Lee. He is now its production manager. He has helped in buying goods for the firm. He supervises the cutting, pattern making, etc. With Margaret Horowitz, he has dealt with the contractors who assemble the garments. He is in final charge of the manufacturing process of the company. He was a valuable asset to the business from the start. He succeeded other employees who were unsatisfactory. He contributed substantially to the success of the business. The petitioner, Margaret Horowitz, married Harry Horowitz in 1934. At that time the partners offered him a partnership interest in the firm. He refused the offer because he felt that if he accepted it some members of the family would resent his being a partner and thus family trouble would arise. Therefore, he continued to work as an employee. During 1937 to 1940, inclusive, his salary was $65 per week, plus an annual bonus of about $2,500. It was understood that *191 the partners would withdraw from the business no more than he did. In 1936 or 1937 Harry Horowitz was offered by other manufacturers a higher salary and a percentage of the profits. He was dissatisfied with his present arrangement with Lee and discussed the situation with his wife, who brought the matter to her brothers' attention. No action was taken. Harry Horowitz continued to be dissatisfied and finally, in 1940, he became thoroughly disheartened and demanded an interest in the business, in view of the fact that he had been offered by another manufacturer twice his salary and 20 per cent of the profits of the business. After much discussion it was agreed that Horowitz should become a partner in Lee. A one-fourth interest was suggested for him but he was satisfied with one-sixth share so long as he became a partner. The petitioners' father, Benjamin Fainblatt, was the arbitrator of family disputes and participated in the lengthly discussions of Horowitz' request and in the ultimate disposition thereof. All members of the family were anxious to retail Horowitz' services. However, Margaret Horowitz felt that by transferring to him half of her interest she would not have an equal *192 voice with her brothers in the management of the company and that the only solution to the problem was for them to turn over half of their interests to their wives, in order to equalize the positions of all three petitioners. The several members of the family finally agreed to establish a partnership composed of the petitioners as general partners and of their respective spouses as special or limited partners. The formation of the partnership was prompted and organized solely by the insistence of Horowitz that he should have a position in the company comparable with those offered to him by other manufacturers. On November 1, 1940, the petitioners and their spouses entered into a written agreement creating the partnership and duly filed a certificate of limited partnership with the appropriate County authorities. The agreement recited that the general partners had carried on the business of manufacturing ladies' and children's apparel under the name of Lee Sportswear Co.; that the limited partners would be admitted into the partnership as therein provided and that the investment or capital of the old partnership was $126,000. The agreement then provided that the new partnership *193 was formed to carry on the business under the same name and at the same place as the old; that each general partner transfer and assign $21,000 to his or her spouse as a limited partner; that each partner should be "deemed to have contributed an equal one-sixth share thereof" and should receive one-sixth of the net annual profits; that all losses should be borne equally but that the limited partners should suffer no loss in excess of his capital and should not be liable for any debts of the partnership; that the general partners should devote their entire time to the business; that the limited partners should have no part in the management, no power to bind the partnership and no right to withdraw capital prior to the dissolution of the partnership; that the partners would not sell or encumber their interests and that each general partner should be entitled to receive a minimum annual salary of $5,000. Further provisions related to the access to the firm's books, retirement or death of a partner and procedure upon the termination of the partnership. Benjamin Fainblatt, father of the petitioners, was designated as the final arbitrator of disputes among the partners. Upon the execution *194 of the partnership agreement of November 1, 1940, the books of the old partnership were closed and books were opened for the new partnership. No cash passed from the petitioners to their respective spouses. The new books showed a capital account of $21,000 for each partner. Each petitioner filed a gift tax return reporting a gift of one-sixth interest in the partnership capital. Lee's bank was informed of the changes in the partnership status. Neither Aida Fainblatt nor Dorothy Fainblatt rendered any substantial service to the partnership business. Aida Fainblatt, Dorothy Fainblatt and Horowitz put no additional money into the business. The petitioners and Horowitz have drawn equal salaries during the taxable years and no bonuses have been paid to them. All partnership profits have been credited equally to the six partners. The amounts received by Aida Fainblatt and Dorothy Fainblatt were deposited by them in their own separate bank accounts. They have made their own separate investments. Their husbands have furnished all the money for the household expenses. Margaret Horowitz and Harry Horowitz have kept their financial affairs separate. They have their own individual bank accounts, *195 savings accounts and investments. Margaret Horowitz has earned substantial sums of money for many years and pays a greater amount of the household expenses than her husband, whose earnings have been less than hers. The business carried on by Lee is extremely hazardous and speculative. It is subject to constant and sudden style changes, over-production and weather conditions. The product must be made properly and completed in time for seasonal sale. Consequently, large inventories are required for the purchase of materials well in advance of the market demand. During the taxable years Lee was compelled to purchase goods whenever they were offered. Hence, normal seasonal schedule of purchases could not be maintained. The firm carried average inventories from $135,000 to $150,000. Its closing inventories on October 31, 1941, October 31, 1942, and October 31, 1943, were $143,280.91, $195,861.38, and $194,161.07, respectively. The company was also compelled to carry large accounts receivable, ranging from $100,000 to $150,000. Heavy cash balances were maintained during the taxable years. Substantial bank loans were obtained in 1941 and 1942. In 1943 purchasers were paying more promptly *196 and no loans were needed. During the taxable years the partners, both general and limited, allowed much of their earnings and profits from the operation of the partnership to accumulate to their credit on its books so that on October 31, 1943, there was an aggregate credit of $434,981.24 to them, in approximately equal amounts. For federal income tax purposes, during the years 1941 and 1943, Lee was a partnership, composed of Leon Fainblatt, Irving Fainblatt, Margaret Fainblatt Horowitz and Harry Horowitz, owning interests therein of one-third, one-third, one-sixth and one-sixth, respectively. In his notice of deficiency the Commissioner held that the net income from the business operated under the firm name of Lee Sportswear Co. should be divided equally among Leon Fainblatt, Irving Fainblatt and Margaret Fainblatt Horowitz "rather than six ways among" Leon Fainblatt, Irving Fainblatt, Margaret Fainblatt Horowitz, and their respective spouses. Opinion VAN FOSSAN, Judge: Since the decisions of the United States Supreme Court in , and , and the many decisions of this Court and *197 others following in their wake, the principles governing the taxability of family partnerships have been so well established and defined that they need no detailed repetition here. It is sufficient to observe that the issue is wholly factual, resting on the specific circumstances of each case. In the cases at bar there is no doubt that Harry Horowitz became a partner of Lee by virtue of the agreement of November 1, 1940. There were cogent and compelling business reasons for reforming the prior partnership agreement to include him. His knowledge of the various phases of the needle trade industry, his wide experience in the specialized functions peculiar to the production of women's and children's garments, his skill in the mechanical operations required, his executive ability and his facility in dealing with assembling concerns united to make his services to Lee invaluable. His brothers-in-law and their sister were anxious to continue to receive the benefit of his expert knowledge and services. The family situation had prevented his becoming a partner in 1934 but after receiving several attractive offers to become associated with other manufacturers of similar products, he demanded *198 and obtained a proprietary interest in the business as a condition that he remain there. The record reveals ample consideration for the formation of the partnership; in fact, if it had not been formed the firm might have sustained serious injury and loss. The transaction before us bears none of the earmarks of an attempt to evade the tax responsibility of the Fainblatt brothers and their sister. The partnership status of Aida Fainblatt and Dorothy Fainblatt, the respective wives of Leon Fainblatt and Irving Fainblatt, is quite different from that of Harry Horowitz. Although their entrance into the firm grew out of the emergent necessity of including Harry Horowitz therein, it was not supported by the same basic consideration. They contributed no capital to the business and performed no appreciable services for it. Their husbands gave them one-half of their shares in the company. They had no voice in its management. They knew little or nothing about its operation and merely "did as they were told". Their inclusion in the partnership did not alter the economic status of their husbands as part producers of the income and follows closely the pattern prescribed in the Tower and Lusthaus *199 cases. Therefore, they are not recognized as partners for Federal income tax purposes. The petitioners argue that the failure of Aida and Dorothy Fainblatt to withdraw their full shares of the profits of the company constitutes a contribution of their own capital to the business and thus entitles them to full recognition as partners. However, their husbands were the source of all of their capital account and, under the concept of "family partnerships", the husbands retained control of it in the conduct of the firm's business. Thus any contributions to capital which may have been made by permitting profits to remain with the company were determined by the husbands according to their own judgment and discretion. If the business required such retention the husbands so decided and the wives had no voice in the decision. Decisions will be entered under Rule 50.